UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:                                                                    CASE NO.:

CHRISTOPHER WELLS HARPER                                  10-7510-8-JRL
JANICE DANIELLE HARPER
     DEBTOR(S)                                                        CHAPTER 7

BRIEF IN OPPOSITION TO TRUSTEE'S OBJECTION TO MOTION TO CONVERT
CASE FROM CHAPTER 7 TO CHAPTER 13

NOW COME the Debtors, by and through counsel, responding to the Objection to Motion to Convert Case from Chapter 7 to Chapter 13, and Chapter 7 Trustee's Report Upon Debtors' Motion to Convert Case to Chapter 13 as follows:

1.     The Debtors filed a Motion to Convert Case to Chapter 13 in good faith, primarily for the purpose of regaining possession of their vehicle from BB&T, and to attempt the discharge of any unsecured debt over-encumbering their primary residence.

2.     The Debtors filed a Motion to Convert Case to Chapter 13 in good faith, and are prepared to explain any alleged discrepancy or inaccuracy addressed in the Chapter 7 Trustee's Report.

3.     In brief, the Debtors respectfully submit the following in response to each paragraph of the Chapter 7 Trustee's Report:

   a.     The Debtors did file a voluntary petition under Chapter 7 of the Bankruptcy Code on September 15, 2010 and subsequently filed a Motion to Convert to Chapter 13 on December 9, 2010.

   b.     The Debtors did file schedules and a Statement of Financial Affairs on September 15, 2010 and an Amended Statement of Financial Affairs on September 16, 2010. At the §341 meeting, Debtors did in fact believe, and so testified, that their schedules were true and accurate in every respect.

   c.     The Debtors were, at all times relevant, unaware of the existence of any inaccuracies in their schedules and statements.

   d.     The Chapter 7 Trustee did inform Debtors at the §341 meeting that the Trustee was very close to objecting to the discharge of the Debtors.

e. The Debtors did file a Second Amended Statement of Financial Affairs on November 15, 2010 which included various business entities listed by their accountant on their tax returns. The Debtors allege that, to the best of their knowledge, said business entities have no real value, and Debtors lack the knowledge or expertise to know exactly why the business entities are listed on the tax returns. The Debtors further allege that any omission regarding the business entities were innocent oversights, and maintain their statements, schedules, and amendments have been filed in good faith.

f. Quit Claim Deed at 310 Ashford Avenue. The real property located in New Hanover County at 310 Ashford Avenue was foreclosed upon in April of 2010. As result of an error in the foreclosure process, and subsequent to the expiration of the ten day upset period, the law firm of Shapiro and Ingle discovered that a filed "Notice of Sale" was absent in the Special Proceedings file relating to said foreclosure. See **Exhibit A: Shapiro and Ingle Motion and Order to Set Aside Sale.**

Unbeknownst to Debtors, a Quit Claim Deed of the property back to the male Debtor was recorded September 2, 2010. At all times relevant, the Debtors had no knowledge of recordation of the Quitclaim Deed, and were wholly unprepared at the §341 meeting to discuss the conveyance with Chapter 7 Trustee. Accordingly, the Debtors request an opportunity to amend their schedules where necessary, to include any information regarding the foreclosure proceeding and subsequent conveyance of the subject real property.

g. Cape Fear Ventures, LLC/Hare Properties, Inc. The Debtors were not prepared at the §341 meeting to discuss with exacting specificity the nature of their ownership in Cape Fear Ventures, LLC or Hare Properties, Inc., but not for want of good faith. Rather, the Debtors have participated in multiple real property investment transactions, which involve business entities as holding companies. The Debtors allege that the real property investments have either been foreclosed upon, or Debtors' interests in any business entities which held title to said properties have been abandoned, forfeited, or administratively dissolved. **See Exhibit B: Memorandum of Sale of Membership Interest in Cape Fear Ventures, LLC and Exhibit C: Certificate of Dissolution of Cape Fear Ventures, LLC.**

h. Bizharp, LLC Distribution. The 2009 tax return provided by Debtors was prepared and filed by a professional accountant, the knowledge and expertise of whom the Debtors relied upon in good faith. The Debtors lack the knowledge and expertise to know why their accountant listed Bizharp, LLC as taking a distribution. The Debtors do know, however, as they stated at the §341 meeting, the investment failed, or in their own words, "never came to fruition."

The Debtors maintain that any statements they have made regarding Bizharp, LLC distributions were made in good faith, based on the knowledge they actually possess, and not the knowledge of a highly trained tax professional, the work product of whom the Debtors have reasonably relied upon. The Debtors relied on the Debt Forgiveness 1099-C provided to them by Bank of America. **See Exhibit D: Bizharp Certificate of Dissolution and Exhibit E: Bank of America 2009 Form 1099-C.**

i.     Foreclosure within one year. The Debtors maintain that any information omitted from their schedules regarding Foreclosures within one year was the result of innocent oversight, and respectfully request an opportunity to comply, if not already cured by amendment.

j.     307 Queens Road, Onslow County. The male Debtor has inspected the recorded Deed and Deed of Trust associated with said property and does not own said property. The Deed of Trust encumbering said property identifies Natasha L. Harper as the wife of Christopher W. Harper. The male Debtor has never been married to a Natasha L. Harper.  Further, the Debtor has examined the signature page of the Deed of Trust and hereby certifies it is not his own. **See Exhibit F: General Warranty Deed and Exhibit G: Deed of Trust.**

k.     Sale of Stock. The Debtors maintain that any information omitted from their schedules regarding the sale of stock was the result of innocent oversight, and respectfully request an opportunity to comply, if not already cured by amendment.

WHEREFORE, the Debtors pray for the court to allow any cure that is necessary and proper for Conversion to from Chapter 7 to Chapter 13.


DATED:     1/18/11          JAMES S. PRICE & ASSOCIATES, P.A.
                            5725 Oleander Drive, C-3
                            Post Office Box 3006
                            Wilmington, North Carolina 28406
                            Telephone: (910) 791-9422
                            Facsimile: (910) 791-0432


                     BY:    s/ James S. Price_____
                            JAMES S. PRICE
                            N.C. Bar No. 32304

                            *Attorneys for Debtors*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury that he is over eighteen (18) years of age, and that the

### BRIEF IN OPPOSITION TO TRUSTEE'S OBJECTION TO MOTION TO CONVERT CASE FROM CHAPTER 7 TO CHAPTER 13

in the above captioned case was this day served upon the below named persons as follows:

By electronic service through CM/ECF:

James B. Angell
Chapter 7 Trustee

By mailing, postage prepaid, first class mail, *or by certified mail return receipt requested if indicated below, or by facsimile if indicated below*, of a copy of such instrument to such persons, parties and/or counsel at the address shown below:

Bankruptcy Administrator
P.O. Box 3758
Wilson, North Carolina 27894-4758

Christopher Wells Harper
Janice Danielle Harper
326 Lonicera Court
Wilmington, North Carolina 28411

Dated: 1/18/11

JAMES S. PRICE & ASSOCIATES, P.A.

__s/ James S. Price_____
P.O. Box 3006
Wilmington, NC 28406
(910)791-9422

EXHIBIT A

IN THE GENERAL COURT OF JUSTICE
OF NORTH CAROLINA
SUPERIOR COURT DIVISION
NEW HANOVER COUNTY
**09sp950**

IN THE MATTER OF THE FORECLOSURE OF A DEED
OF TRUST EXECUTED BY CHRISTOPHER HARPER
AND JANICE HARPER DATED MARCH 13, 2007 AND
RECORDED IN BOOK 5154 AT PAGE 808 IN THE NEW
HANOVER COUNTY PUBLIC REGISTRY, NORTH
CAROLINA

**MOTION TO SET ASIDE FORECLOSURE SALE**

COMES NOW, Grady I. Ingle, Substitute Trustee, under the above captioned Deed of Trust and respectfully shows the Court:

1.      Pursuant to an Order dated November 10, 2009, a foreclosure sale was held on May 4, 2010 with Wells Fargo Bank, N.A., as Trustee for the Certificateholders of Soundview Home Loan Trust 2007-OPT1, Asset-Backed Certificates, Series 2007-OPT1 as the successful bidder.

2.      Subsequent to the expiration of the ten day upset period it was brought to our attention that there wasn't a filed Notice of Sale in the Special Proceedings file.

WHEREFORE, Grady I. Ingle, Substitute Trustee, prays the Court as follows that said foreclosure sale be set aside .

This the 13th day of August, 2010.

Grady I. Ingle Or Elizabeth B. Ells
10130 Perimeter Parkway, Suite 400
(704)333-8107
http://shapiroattorneys.com/nc/

09-116679

IN THE GENERAL COURT OF JUSTICE
OF NORTH CAROLINA
SUPERIOR COURT DIVISION
NEW HANOVER COUNTY
**09sp950**

IN THE MATTER OF THE FORECLOSURE OF A DEED
OF TRUST EXECUTED BY CHRISTOPHER HARPER
AND JANICE HARPER DATED MARCH 13, 2007 AND
RECORDED IN BOOK 5154 AT PAGE 808 IN THE NEW
HANOVER COUNTY PUBLIC REGISTRY, NORTH
CAROLINA

### ORDER SETTING ASIDE FORECLOSURE SALE

IT APPEARING TO THE COURT that an Order Permitting Foreclosure was entered in the above captioned case on November 10, 2009, and a foreclosure sale was held on May 4, 2010 with Wells Fargo Bank, N.A., as Trustee for the Certificateholders of Soundview Home Loan Trust 2007-OPT1, Asset-Backed Certificates, Series 2007-OPT1 as the successful bidder.

AND IT FURTHER APPEARING that subsequent to the expiration of the ten day upset period, the Substitute Trustee was informed that there wasn't a filed Notice of Sale in the Special Proceedings file.

NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that said foreclosure sale be set aside .

This the _____ day of _____, 2010.

_____
CLERK OF SUPERIOR COURT

09-116679

EXHIBIT B

## MEMORANDUM OF SALE OF MEMBERSHIP
## INTEREST IN CAPE FEAR VENTURES, LLC

THIS Memorandum of Sale of Membership Interest in Cape Fear Ventures, LLC. (herein "Memorandum"), effective as of December 31, 2008, is made by and among CHRISTOPHER HARPER, a citizen and resident of the State of North Carolina (herein "SELLER"), and C. WES HODGES, II, and MATTHEW FIELD, citizens and residents of North Carolina (herein referred to collectively as "BUYERS") (where appropriate, collectively referred to herein as "the Parties):

### W I T N E S S E T H

**WHEREAS**, SELLER and BUYERS are the sole members of Cape Fear Ventures, LLC a North Carolina limited liability company (herein "Company"), with SELLER owning 33.3% of the total outstanding shares of the Company, and BUYERS equally owning the remaining 66.7% of the total outstanding membership interest of the Company.

**WHEREAS**, the Company is the record owner of four pieces of real property located at the following addresses:  (1) 608 S. Lake Park Boulevard, Carolina Beach, N.C.; (2) 314 N. 14th Street, Wilmington, N.C.; (3) 111 S. 15th Street, Wilmington, N.C.; and (4) 513 N. 8th Street, Wilmington, N.C.  The Company also is the beneficial owner of the real property located at 1904 Anne Street, Wilmington, N.C.;

**WHEREAS**, SELLER and BUYERS have engaged in discussions concerning the sale by SELLER and the purchase by BUYERS of all of SELLER'S ownership interest in the Company for a total purchase price of $11,148.00.

**NOW, THEREFORE**, in consideration of the mutual promises set forth herein, and other such valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, SELLER and BUYERS, as approved by the Company, hereby agree as follows:

2

1.　SELLER does hereby sell and convey, and BUYERS do hereby purchase, buy and accept from SELLER, all of SELLER'S right, title and interest, and all of SELLER'S shares, in the Company, effective as of December 31, 2008.

2.　The Parties further acknowledge and agree that with this transfer to BUYERS, SELLER shall no longer be a member, manager or officer of the Company, and shall not be entitled to any proceeds from the sale or transfer of any assets of the Company.

3.　The Parties further acknowledge and agree that the purchase price for SELLER'S ownership interest in the Company, in the total amount of $11,148.00, shall be paid to SELLER within seven (7) days of the full execution of this Memorandum, with both C. WES HODGES, II, and MATTHEW FIELD being responsible for half the purchase price. The amount due from C. WES HODGES, II, to SELLER shall be reduced by $173.00, representing SELLER'S one-third (1/3rd) share of the $520.00 paid by C. WES HODGES, II, for preparation of the Company's 2008 tax return. BUYERS have previously paid SELLER the sum of $6,800.00 for SELLER'S interest in the real property located at 1904 Anne Street, and this sum shall not be applied to the purchase price set forth herein, which shall be separate and apart from the previous payment to SELLER.

4.　Upon the full execution of this Memorandum and receipt of the purchase price by SELLER, and effective as of December 31, 2008, BUYERS shall equally own 100% of the membership interest of the Company. From and after execution of this Agreement, BUYERS shall be responsible for all financial obligations of the Company. BUYERS shall endeavor to have SELLER and SELLER'S wife released from any personal guaranties for any loans on the property owned by the Company. If the Company's lender refuses to release SELLER and SELLER'S wife from any personal guaranties, BUYERS shall indemnify and hold harmless

3

SELLER and SELLER'S wife from any and all liability under any such loans and/or personal guaranties.

5.      Within sixty (60) days of the full execution of this Memorandum, SELLER shall be entitled to rescind this Memorandum by repaying to BUYERS the full amount of the purchase price set forth herein, plus the $6,800.00 paid by BUYERS to SELLER for SELLER'S interest in the real property located at 1904 Anne Street, together with interest on the full amount to be repaid at the rate of 4% per annum from the date of the full execution of this Memorandum.

6.      The Parties agree to execute such other and further documents and instruments of transfer that reasonably may be required to complete the sales transaction contemplated herein. The Parties further acknowledge that this transfer complies with the operating agreement of the Company, and that the Company otherwise has consented to the sale, as evidenced by the Company's execution of this Memorandum.

7.      The Parties further agree that the terms of this Memorandum are contractual in nature, and not mere recitals, and that this Memorandum shall be governed by the laws of the State of North Carolina. Any disputes regarding this Memorandum shall be resolved by binding arbitration in accordance with the North Carolina Uniform Arbitration Act (Revised).

8.      The Parties hereto further acknowledge that they have had the opportunity to have this Memorandum reviewed by counsel of their choosing, and have executed this Memorandum only after carefully reviewing the same and giving due consideration to the provisions set forth herein and the consequences of performance or non-performance, and that no promise or representation of any kind, other than as contained herein, has been made. The Parties have relied exclusively on their own judgment and the advice of their attorneys in executing this Memorandum.

4

9.    This Memorandum shall not be construed in favor of or against any particular party merely because it was drafted by any particular party.

10.    This Memorandum shall be binding upon, and inure to the benefit of, the Parties hereto, and their heirs, personal representatives, successors and assigns.

11.    The Company evidences its consent to the sale and purchase described herein by its execution of this Memorandum.

**IN WITNESS THEREOF**, the undersigned have executed this Agreement on the dates set forth below.

**<u>SELLER</u>:**

_____(SEAL)          Date:_____
**CHRISTOPHER HARPER**

**<u>BUYERS</u>:**

_____(SEAL)          Date:_____
**C. WES HODGES, II**

_____(SEAL)          Date:_____
**MATTHEW FIELD**

**<u>COMPANY</u>:**

_____(SEAL)          Date:_____
**CAPE FEAR VENTURES, LLC**
**By:  C. WES HODGES, II, Member/Manager**

5

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

I, a Notary Public of the County and State aforesaid, do hereby certify that Christopher Harper personally appeared before me this date and acknowledged the due execution of the foregoing Memorandum of Sale of Membership Interest in Cape Fear Ventures, LLC.

WITNESS by hand and notarial seal, this the _____ day of August, 2009.


_____
NOTARY PUBLIC


My Commission expires: _____




STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

I, a Notary Public of the County and State aforesaid, do hereby certify that C. Wes Hodges, II, individually and on behalf of Cape Fear Ventures, LLC, personally appeared before me this date and acknowledged the due execution of the foregoing Memorandum of Sale of Membership Interest in Cape Fear Ventures, LLC.

WITNESS by hand and notarial seal, this the _____ day of August, 2009.


_____
NOTARY PUBLIC


My Commission expires: _____

6

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

I, a Notary Public of the County and State aforesaid, do hereby certify that Matthew Field personally appeared before me this date and acknowledged the due execution of the foregoing Memorandum of Sale of Membership Interest in Cape Fear Ventures, LLC.

WITNESS by hand and notarial seal, this the _____ day of August, 2009.


_____
NOTARY PUBLIC


My Commission expires: _____

EXHIBIT C

NOTICE TO REGISTERED AGENT:

Under N.C.G.S. Section 55D-30(b), it is the duty of the registered agent to forward this certificate to the business entity at the last known address.

Cape Fear Ventures, LLC (0843731)
4918 Wrightsville Avenue
Wilmington, NC 28403



## State of North Carolina
### Department of The Secretary of State

# CERTIFICATE OF DISSOLUTION

I, Elaine F. Marshall, Secretary of State, as mandated by law, do hereby certify that

Cape Fear Ventures, LLC

has been administratively dissolved pursuant to the procedure set forth in N.C.G.S. Section 57C-6-03 for failure to file an annual report effective as of the date set forth hereunder.

A Limited Liability Company administratively dissolved under N.C.G.S. Section 57C-6-03 may apply to the Secretary of State for reinstatement by complying with the procedure set forth in the N.C.G.S. Section 57C-6-03.

**This the 26th day of August, 2010**

*Elaine F. Marshall*

Elaine F. Marshall
**Secretary of State**

Document Id: C201023806917



NOTICE TO REGISTERED AGENT:                    EXHIBIT D

Under N.C.G.S. Section 55D-30(b), it is the duty of the registered agent to forward this certificate to the business entity at the last known address.

Bizharp, LLC (0921368)
Gott & Keenan, PLLC
602 Chestnut Street
Wilmington, NC 28401



**State of North Carolina**
Department of The Secretary of State

# CERTIFICATE OF DISSOLUTION

I, Elaine F. Marshall, Secretary of State, as mandated by law, do hereby certify that

Bizharp, LLC

has been administratively dissolved pursuant to the procedure set forth in N.C.G.S. Section 57C-6-03 for failure to file an annual report effective as of the date set forth hereunder.

A Limited Liability Company administratively dissolved under N.C.G.S. Section 57C-6-03 may apply to the Secretary of State for reinstatement by complying with the procedure set forth in the N.C.G.S. Section 57C-6-03.

**This the 25th day of August, 2010**

*Elaine F. Marshall*

Elaine F. Marshall
**Secretary of State**

Document Id: C201023715053



BANK OF AMERICA, N.A.
CT2-515-BB-11
70 BATTERSON PARK ROAD
FARMINGTON, CT    06032          EXHIBIT E

**Bank of America**

BANK# 4001

00190460 IA 0445          ***********AUTO**3-DIGIT 284

BIZHARP LLC
326 LONICERA COURT
WILMINGTON, NC 28411-8321

# COMBINED TAX STATEMENT
# FOR YEAR 2009

THIS STATEMENT REPORTS 1099-DIV (OMB No. 1545-0110), 1099-INT (OMB No. 1545-0112), 1099-OID (OMB No. 1545-0117), 1098 (OMB No. 1545-0901), 1099-MISC (OMB No. 1545-0115), 1099-B (OMB No. 1545-0715), 1099-O (OMB No. 1545-1760), 1099-A (OMB No. 1545-0877), 1099-C (OMB No. 1545-1424), 1099-S (OMB No. 1545-0997, 1098-E (OMB No. 1545-1576), 1099-SA (OMB No. 1545-1517)
DEPARTMENT OF THE TREASURY-INTERNAL REVENUE SERVICE.

| PAYERS E.I.N. |
| --- |

| CUST SERV PH # |
| --- |
| (800) 986-9756 |

| TAXPAYERS IDENTIFICATION NUMBER |
| --- |

"For Form 1099-R, DIV, INT, MISC, OID and O: This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported."

| ACCOUNT NUMBER | ACCOUNT TYPE | IRS DESCRIPTION | IRS BOX # | AMOUNT |
| --- | --- | --- | --- | --- |
| * * * 2009 FORM 1099-C, CANCELLATION OF DEBT * * * | | | | |
| 010001243822273 | DEBT FORGIVEN | AMT DEBT CANCELED | 2 | 47316.59 |
| | 03/31/2009 | DATE CANCELED | 1 | |
| NOTE | | DEBT DESCRIP | 4 | |
| | | BORROWER WAS NOT PERSONALLY | 5 | |
| | | LIABLE FOR REPAYMENT OF DEBT | | |
| BIZHARP LLC | | | | |

PLEASE NOTE:  INQUIRIES REGARDING THESE ACCOUNTS SHOULD BE DIRECTED TO OUR CUSTOMER SERVICE PHONE NUMBER ABOVE. PLEASE CHECK YOUR TAXPAYER IDENTIFICATION NUMBER AND CALL THE NUMBER LISTED ABOVE IF IT IS INCORRECT.

**TDD HEARING IMPAIRED PLEASE CALL 1-800-300-6407**

"FORM 1099 OID: THIS MAY NOT BE THE CORRECT FIGURE TO REPORT ON YOUR INCOME TAX RETURN. SEE INSTRUCTIONS ON BACK.

ACCOUNT SUMMARY

EXHIBIT F



BOOK 1682 PAGE 1033

THIS DOCUMENT PRESENTED TO
THE ONSLOW COUNTY TAX OFFICE
DATE 2-15-01 CLERK _____

2001 FEB 15  AM 10: 06

ONSLOW COUNTY          02/15/2001
                       $34.00
STATE OF
NORTH
CAROLINA          Real Estate
                  Excise Tax

Excise Tax   $34.00                    Recording Time, Book and Page

Tax Lot No. ............................................................Parcel Identifier No. ............................................
Verified by ...............................................County on the............... day of .............................., 19.........
by ..............................................................................................................................................

Mail after recording to John J. Peck, Attorney at Law, P. O. Box 299, Swansboro, NC 28584
..................................................................................................................................................

This instrument was prepared by John J. Peck, Esquire, P. O. Box 299, Swansboro, NC 28584

Brief description for the Index     LT 4, SEC II, "QUAIL HAVEN SUBDIVISION"

# NORTH CAROLINA GENERAL WARRANTY DEED

THIS DEED made this 28th day of December, 2000, by and between

| GRANTOR | GRANTEE |
|---|---|
| JOSEPH LUCILLE WELLSPEAK, WIDOWED | CHRISTOPHER W. HARPER, MARRIED |
| 127 Hilltop Drive Swansboro, NC 28584 | 307 Queens Road Hubert, NC 28539 |

Enter in appropriate block for each party: name, address, and, if appropriate, character of entity, e.g. corporation or partnership.

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, that the Grantor, for a valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto the Grantee in fee simple, all that certain lot or parcel of land situated in the City of ........................................., Swansboro Township. ................ Onslow ................ County, North Carolina and more particularly described as follows:

Being all of Lot No. 4, Section II, as shown on a map entitled "Quail Haven Subdivision", prepared by Sam J. Morris, Jr., C.E., and recorded in Map Book 11, Page 57, Onslow County Registry, reference to which map is hereby made for a more complete and accurate description.

Subject to restrictive covenants recorded in Book 408, Page 128, Onslow County Registry.

N.C. Bar Association Form No. L-3, © 1976, Revised © 1977
This standard form has been approved jointly by:
The N. C. Bar Association and The N. C. Association of Realtors®, Inc.          NCBA 001

SoftPro

(Page 2 of 2)

BOOK 1682 PAGE 1034

The property hereinabove described was acquired by Grantor by instrument recorded in Book 684, Page 450

A map showing the above described property is recorded in Map Book 11, Page 57, Onslow County Registry.

TO HAVE AND TO HOLD the aforesaid lot or parcel of land and all privileges and appurtenances thereto belonging to the Grantee in fee simple.

And the Grantor covenants with the Grantee, that Grantor is seized of the premises in fee simple, has the right to convey the same in fee simple, that title is marketable and free and clear of all encumbrances, and that Grantor will warrant and defend the title against the lawful claims of all persons whomsoever except for the exceptions hereinafter stated. Title to the property hereinabove described is subject to the following exceptions:

Restrictive covenants recorded in Book 408, Page 128 Onslow County Registry.

Easements and Restrictions of record.

IN WITNESS WHEREOF, the Grantor has hereunto set his hand and seal, or if corporate, has caused this instrument to be signed in its corporate name by its duly authorized officers and its seal to be hereunto affixed by authority of its Board of Directors, the day and year first above written.

| (Corporate Name) | | JOSEPH LUCILLE WELLSPEAK .............(SEAL) |
| By: .............................. | | Joseph Lucille Wellspeak ..........(SEAL) |
| ..............................President | USE BLACK INK ONLY | |
| ATTEST: | | ..............................(SEAL) |
| ..............................Secretary (Corporate Seal) | | ..............................(SEAL) |

SEAL-STAMP      NORTH CAROLINA, .........Onslow.............County.

....... Public of the County and State aforesaid, certify that JOSEPH LUCILLE WELLSPEAK ...... Grantor,

Official Seal
Notary Public-Onslow Co, N.C.
JOHN J. PECK
My Commission Expires 3-29-04

....... personally appeared before me this day and acknowledged the execution of the foregoing instrument. Witness my hand and official stamp or seal, this 14TH day of JANUARY 200.1

My commission expires: MARCH 29, 2004      John J. Peck      Notary Public

SEAL-STAMP      NORTH CAROLINA, ..............................County.

I, a Notary Public of the County and State aforesaid, certify that ..............................
personally came before me this day and acknowledged that .... he is .............................. Secretary of
.............................. a North Carolina corporation, and that by authority duly
given and as the act of the corporation, the foregoing instrument was signed in its name by its ..............................
President, sealed with its corporate seal and attested by ............ as its .............................. Secretary.
Witness my hand and official stamp or seal, this ........day of .............................., 19.........

My commission expires: .............................. .............................. Notary Public

The foregoing Certificate(s) of .............................. John J. Peck ..............................
..............................
..............................

is/are certified to be correct. This instrument and this certificate are duly registered at the date and time and in the Book and Page shown on the first page hereof.

Mildred M. Thomas .............................. REGISTER OF DEEDS FOR Onslow ..............................COUNTY

By .............................. Deputy/Assistant - Register of Deeds

N.C. Bar Association Form No. L-3. © 1976, Revised © 1977
This Standard Form has been approved jointly by:
The N. C. Bar Association and The N. C. Association of Realtors®, Inc.      NCBA 001

SoftPro

(Page 1 of 8)

EXHIBIT G

**Bank of America**

BANK OF AMERICA, N.A. (THE "BANK")

RETURN To JOHN J. PECK, ATTORNEY AT LAW, PO BOX 299, SWANSBORO NC 28584

**Deed of Trust (Closed-end)**

0000006801106525499

BOOK 1682 PAGE 1035

2001 FEB 15 AM 10

**Satisfaction:** The debt secured by the within Deed of Trust together with the note(s) or other obligation(s) secured thereby has been satisfied in full.

This the _____ day of _____

Signed: _____

Recording: Time, Book and Page

Tax Lot Number _____ Parcel Identifier Number _____
Verified by _____ County on the _____ day of _____
by _____

Mail after recording to BANK OF AMERICA/CONSUMER LOAN PROCESSING
PHYLLIS SCALZO
1400 BEST PLAZA DRIVE

RICHMOND VA 23227

This instrument prepared by BANK OF AMERICA/CONSUMER LOAN PROCESSING/PHYLLIS SCALZO

This Deed of Trust is made this 12 day of FEBRUARY 2001, by
AND CHRISTOPHER W HARPER
AND NATASHA L HARPER, MARRIED TO EACH OTHER

whose address is _____
(jointly and severally if more than one, "Grantor"), to PRLAP, INC.,

as trustee(s) ("Trustee", whether one or more), for the benefit of BANK OF AMERICA, N.A.
P.O. BOX 26041 GREENSBORO, NC 27420 whose address for notice purposes is (the "Bank").

Witnesseth: That Whereas, DONALD N HARPER AND CHRISTOPHER W HARPER
AND NATASHA L HARPER

(jointly and severally if more than one, "Borrower") is justly indebted to the Bank according to the terms of a certain promissory note given by Borrower to the Bank dated 02/12/01 , in the principal amount of
TWENTY THOUSAND THREE HUNDRED NINETY THREE DOLLARS AND 00 CENTS
Dollars ($ 20,393.00 ) with final payment being due on 02/27/16 unless renewed, modified, extended or consolidated (the "Note"); and

**Whereas,** this Deed of Trust is given to secure to the Bank (a) the repayment of the debt evidenced by the Note, and all renewals, extensions, modifications, replacements and consolidations of the Note; (b) the payment of all other sums, with interest, advanced under the terms of this Deed of Trust; (c) the performance of Grantor's covenants and agreements under this Deed of Trust and any other agreements executed by Grantor at the Bank's request pertaining to the debt evidenced by the Note (together, the "Loan Documents"); and (d) all future amounts, including future advances, if any, that the Bank in its sole discretion may loan to Borrower, together with interest thereon. The total indebtedness secured by this Deed of Trust is collectively referred to herein as the "Secured Indebtedness".

**Now Therefore,** in consideration of the premises and of the sum hereinabove set forth, Grantor grants and conveys to Trustee, its heirs, successors and assigns, in fee simple, but in trust nevertheless, the following property located in the County of ONSLOW , State of North Carolina to wit:
SEE ATTACHED SCHEDULE "A"

CANCELLED

Address of Property: 307 QUEENS RD
HUBERT NC 28539-0000 ("Property Address");

33-04-9035M (3/2000) NNC

Page 1 of 7

Upon presentation of the original notes and mortgages marked satisfied, together with the signature of the grantee, I hereby cancel same.
This 26 day of March 2001
Mildred M. Thomas
Register of Deeds

## BOOK 1682 PAGE 1036

**Together** with all buildings, structures and other improvements now or hereafter located on the property described, or any part and parcel thereof; all rights, title and interest of Grantor in and to the minerals, flowers, shrubs, crops, trees, timber, and other emblements now or hereafter on said property or under or above the same or any part or parcel thereof; all and singular the tenements, hereditaments, easements and appurtenances belonging or in any way appertaining, and the reversion or reversions, remainder or remainders, rents, issues and profits thereof; and also all the estate, right, title, interest, claim and demand whatsoever of Grantor of, in and to the same and of, in and to every part and parcel thereof; all machinery, apparatus, equipment, fittings and fixtures, whether actually or constructively attached to said property, now or hereafter located in, upon or under said property or any part thereof; any and all awards or payments, including interest thereon, and the right to receive the same, as a result of: (a) the exercise of the right of eminent domain; (b) the alteration of the grade of any street; or (c) any other injury to, taking of, or decrease in the value of, said property, to the extent of all amounts that may be secured by this Deed of Trust at the date of receipt of any such award or payment by the Bank and of the reasonable attorney's fees, costs and disbursements incurred by the Bank in connection with the collection of such award or payment. All of such property hereby granted and conveyed is collectively referred to herein as the "Property".

**To Have and To Hold,** the Property to said Trustee, Trustee's heirs, successors and assigns forever, upon the trusts, terms and conditions, and for the uses hereinafter set forth.

**This Deed of Trust is given and accepted on the following terms:**

**Representations and Warranties.** Grantor warrants that Grantor has good title to the Property, and is lawfully seized and possessed of the Property and every part thereof, and has the right to grant and convey same, that the Property is unencumbered except as may be herein expressly provided; and that Grantor will forever warrant and defend generally the title to the Property unto Trustee and the Bank against the claims of all persons whomsoever.

**Covenants.** Grantor further covenants and agrees as follows:

**1. Compliance with Loan Documents.** Grantor shall promptly pay and perform and comply with all obligations, covenants, agreements and conditions imposed upon Grantor by the Loan Documents.

**2. Charges; Liens.** Grantor shall pay when due all taxes, assessments, charges, fines and impositions attributable to the Property that may attain priority over this Deed of Trust, and leasehold payments or ground rents, if any. If Grantor makes these payments directly, upon the Bank's request Grantor shall promptly furnish to the Bank receipts evidencing the payments.

**3. Funds for Taxes and Insurance.** Upon request by the Bank, Grantor shall pay to the Bank on the days payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments that may attain priority over this Deed of Trust as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." The Bank may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Grantor's escrow account under the Federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, the Bank may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. The Bank may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law. Except as may otherwise be provided by applicable law, in no event shall the Bank be liable for any interest on any amount paid to it as herein required, and the money so received may be held and commingled with its own funds, pending payment or application thereof as herein provided. If requested by the Bank, Grantor shall furnish to the Bank, at least thirty (30) calendar days before the date on which the same will become past due, an official statement of the amount of said taxes, assessments, insurance premiums and rents next due, and the Bank shall pay said charges to the amount of the then unused credit therefor as and when they become severally due and payable. An official receipt therefor shall be conclusive evidence of such payment and of the validity of such charges. The Bank may, at its option, pay any of these charges when payable, either before or after they become past due, without notice, or make advances therefor in excess of the then amount of credit for said charges. The excess amount advanced shall be immediately due and payable to the Bank and shall become part of the Secured Indebtedness and bear interest at the rate of interest stated in the Note from date of advancement. The Bank may apply credits held by it for the above charges, or any part thereof, on account of any delinquent installments of principal or interest or any other payments maturing or due under this instrument, and the amount of credit existing at any time shall be reduced by the amount thereof paid or applied as herein provided. The amount of the existing credit hereunder at the time of any transfer of the Property shall, without assignment thereof, inure to the benefit of the successor-owner of the Property and shall be applied under and subject to all of the provisions hereof. Upon payment in full of the Secured Indebtedness, the amount of any unused credit shall be paid over to the person entitled to receive it.

**4. No Other Liens.** Grantor will not, without the prior written consent of the Bank, except as otherwise specified by applicable law, create, place or permit to be created or placed, or through any act or failure to act, acquiesce in the placing of, any deed of trust, mortgage, voluntary or involuntary lien, whether statutory, constitutional or contractual, encumbrance, security interest or conditional sale against or covering the Property, or any part thereof, regardless of whether the same are expressly or otherwise subordinate to the lien or security interest created in this Deed of Trust. Should any of the foregoing become attached hereafter or in any manner to any part of the Property without the prior written consent of the Bank, Grantor will cause the same to be promptly discharged and released.

**5. Insurance.** Grantor shall keep the improvements, if any, now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which the Bank requires in an amount equal to the lesser of (a) the current outstanding balance on the Note; (b) one hundred percent (100%) of the maximum insurable value of the Property; or (c) for flood insurance only, one hundred percent (100%) of the maximum amount of insurance required under any federal, state or local flood insurance program (if the Note secured is a TaxSmart loan, then parts (a) or (b) above are not required). If requested by the Bank, Grantor shall also obtain liability insurance naming the Bank as an additional insured party in an amount as may be required by the Bank. Each insurance carrier providing any such insurance shall be chosen by Grantor subject to the Bank's approval which shall not be unreasonably withheld. If Grantor fails to obtain any insurance required by this paragraph or if Grantor fails to pay the insurance premiums for any period of thirty (30) consecutive calendar days (forty five (45) calendar days for flood insurance) during the term of this Deed of Trust, the Bank may obtain the insurance and pay the premiums. If the Bank does so, then, at the Bank's sole option, (i) Grantor shall pay to the Bank within ten (10) calendar days after written notice from the Bank all monies advanced by the Bank to obtain insurance and to pay insurance premiums; or (ii) the Bank may reschedule the payments for the remaining term of the Note to include such amounts; or (iii) the Bank may add such amounts to the final payment due under the Note. In any event, such amounts shall become part of the Secured Indebtedness, and Grantor agrees to pay interest on such amounts until they are paid in full, at the rate of interest stated in the Note. Grantor agrees that the amount and type of insurance purchased by the Bank is within the Bank's sole discretion.

All insurance policies and renewals shall be in form and content satisfactory to the Bank and all such policies covering loss or damage to the Property shall include a standard noncontributory mortgagee clause in favor of the Bank. The Bank shall have the right to hold the policies and renewals. Grantor shall promptly give to the Bank all receipts of paid premiums and renewal notices. In the event of loss, Grantor shall give prompt notice to the insurance carrier and the Bank. The Bank may make proof of loss if not made promptly by Grantor, but shall have no duty to do so nor any duty to see that any insurance is in force or is adequate.

If in the sole discretion of the Bank the restoration or repair is economically feasible and the Bank's security is not lessened, the insurance proceeds shall be applied to restoration or repair of the Property damaged. If in the sole discretion of the Bank the restoration or repair is not economically feasible or the Bank's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Deed of Trust, whether or not then due, in such manner and order as the Bank, in its sole discretion, may elect, with any excess paid to Grantor. If Grantor abandons the Property, or does not answer within thirty (30) calendar days a notice from the Bank that the insurance carrier has offered to settle a claim, then the Bank may collect the insurance proceeds. The Bank may use the proceeds to repair or restore the Property or to pay sums secured by this Deed of Trust, in such manner and order as the Bank, in its sole discretion, may elect, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless the Bank and Grantor otherwise agree in writing, any application of insurance proceeds to principal shall be to the scheduled payments in inverse order of their scheduled due dates and shall not extend or postpone the due date of the scheduled payments or change the amount of the payments to the extent not lessened or discharged by such application. If the Property is acquired by the Bank, Grantor's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to the Bank to the extent of the sums secured by this Deed of Trust.

Page 2 of 7

SCHEDULE "A"   BOOK 1682 PAGE 1037
ATTACHMENT

Being all of Lot No. 4, Section II, as shown on a map entitled "Quail Haven Subdivision", prepared by Sam J. Morris, Jr., C.E., and recorded in Map Book 11, Page 57, Onslow County Registry, reference to which map is hereby made for a more complete and accurate description.

Subject to restrictive covenants recorded in Book 408, Page 128, Onslow County Registry.

HARPERWE
307 Queens Road, Hubert NC

(Page 4 of 8)

BOOK 1682 PAGE 1038

6. **Maintenance and Protection of Property; Imposition.** Grantor shall maintain the Property in good condition and repair, shall not commit or suffer any waste to the Property, and shall comply with, or cause to be complied with, all statutes, ordinances and requirements of any governmental authority relating to the Property or any part thereof. Grantor shall promptly repair, restore, replace or rebuild any part of the Property, now or hereafter encumbered by this Deed of Trust, which may be affected by any activity of the character referred to in Section 8. No part of the Property, including, but not limited to, any building, structure, parking lot, driveway, landscape scheme, timber or other ground improvement, or other property, now or hereafter conveyed as security by or pursuant to this Deed of Trust, shall be removed, demolished or materially altered without the prior written consent of the Bank. Grantor shall complete, within a reasonable time, and pay for any building, structure or other improvement at any time in the process of construction on the Property. Grantor shall not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Property or any part thereof. The Bank and any person authorized by the Bank shall have the right to enter and inspect the Property at all reasonable times and access thereto shall be permitted for that purpose.

7. **Protection of Bank of America's Rights in the Property.** At any time and all times Grantor shall furnish and record, at Grantor's expense, all such further assurances as may be requisite to assure and confirm the estate hereby granted or intended so to be whether now or in the future. If Grantor fails to perform the covenants and agreements contained in this Deed of Trust, or if there is a legal proceeding that may significantly affect the Bank's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then the Bank may do and pay for whatever is necessary to protect the value of the Property and the Bank's rights in the Property. The Bank's actions may include paying any sums secured by a lien that has priority over this Deed of Trust, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although the Bank may take actions under this Section 7, the Bank does not have to do so. No such action will waive any default. In the event the Bank makes any payments which the Bank deems necessary to protect the value of the Property and the Bank's rights in the Property, the Bank, upon making such payment, shall be subrogated to all of the rights of the person or entity receiving such payment. Any amounts disbursed by the Bank pursuant to this Deed of Trust shall become part of the Secured Indebtedness. Unless Grantor and the Bank agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the rate of interest stated in the Note and shall be payable upon demand from the Bank to Grantor or Borrower.

8. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking, of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned to and to the extent permitted by law shall be paid to the Bank to be applied to the Secured Indebtedness, with any amounts in excess of the Secured Indebtedness being paid to Grantor.

If the Property is abandoned by Grantor, or if, after notice by the Bank to Grantor that the condemnor offers to make an award or settle a claim for damages, Grantor fails to respond to the Bank within thirty (30) calendar days after the date the notice is given, the Bank is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Deed of Trust, whether or not then due. Unless the Bank and Grantor otherwise agree in writing, any application of proceeds to principal shall be to the scheduled payments in inverse order of their scheduled due dates and shall not extend or postpone the due date of the payments referred to in the Note or this Deed of Trust or change the amount of such payments to the extent not discharged by such application.

9. **Hazardous Substances.** Grantor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Grantor shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Grantor shall promptly give the Bank written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law, as soon as Grantor first has actual knowledge. If Grantor learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Grantor shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Section 9, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Section 9, "Environmental Law" means federal laws and laws of the jurisdictions where the Property is located that relate to health, safety, or environmental protection.

Grantor shall indemnify and hold harmless the Bank from and against, and reimburse the Bank on demand for, any and all claims, demands, liabilities, losses, damages, causes of action, costs and expenses (including without limitation reasonable fees and expenses of attorneys and other professional consultants and experts) of every kind which may be imposed upon, asserted against or incurred or paid by the Bank as a result of the presence of any Hazardous Substance on, in, under, above or about the Property, or the migration or release or threatened migration or release of any Hazardous Substance on, to, from or through the Property, at any time during or before Grantor's ownership of the Property, or any act, omission or event existing or occurring in connection with the handling, storage, removal or disposal of any such Hazardous Substance or any violation of any Environmental Law or the filing or imposition of any environmental lien or claim against the Property as a result of any such presence, migration, release, threatened migration or release, act, omission or event.

10. **Events of Default.** The occurrence of any one of the following shall be a default under this Deed of Trust and under the other Loan Documents ("Default"):

a. **Failure to Pay any Secured Indebtedness.** Any of the Secured Indebtedness is not paid when due, regardless of how such amount may have become due.

b. **Non performance of Covenants.** Any covenant, agreement or condition herein, in the Note or in any other Loan Document, other than a covenant, agreement or condition which is addressed as a Default elsewhere in this Section 10, is not fully and timely performed, observed or kept.

c. **Breach of Warranty.** Any statement, representation or warranty in any Loan Document or in any financial statement delivered to the Bank in connection with the Secured Indebtedness is false, misleading or erroneous in any material respect.

d. **Bankruptcy or Insolvency.** Any Bankruptcy or insolvency proceeding is instituted by or against Borrower, Grantor or any person liable, directly or indirectly, for any of the Secured Indebtedness, or if any tax lien, levy or garnishment is levied against any such party.

e. **Default Under Other Lien.** A default or event of default occurs under any lien, security interest or assignment covering the Property or any part thereof (whether or not the Bank has consented, and without hereby implying the Bank's consent, to any such lien, security interest or assignment created hereunder), or the holder of any such lien, security interest or assignment declares a default or institutes foreclosure or other proceedings for the enforcement of its remedies thereunder.

f. **Liquidation, Etc.** The liquidation, termination, dissolution, merger, consolidation or failure to maintain good standing in each state that business is conducted (or in the case of an individual, the death or legal incapacity) of Borrower, Grantor or any person liable, directly or indirectly, for any of the Secured Indebtedness.

g. **Enforceability; Priority.** Any Loan Document shall for any reason without the Bank's specific written consent cease to be in full force and effect, or shall be declared null and void or unenforceable in whole or in part, or the validity or enforceability thereof in whole or in part shall be challenged or denied by any party thereto other than the Bank, or the liens, estates, or security interests established under this Deed of Trust in any of the Property become unenforceable in whole or in part, or cease to be of the priority herein required, or the validity or enforceability thereof, in whole or in part, shall be challenged or denied by Grantor or any person liable, directly or indirectly, for any of the Secured Indebtedness.

h. **Other Default.** A default or event of default occurs under any other Loan Document, or under any other Section of this Deed of Trust which specifies a condition or event as a Default.

Page 3 of 7

BOOK 1682 PAGE 1039

**11. Rights and Remedies on Default.** Upon the occurrence of any event of Default and at any time thereafter, the Bank, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies permitted by law:

**a. Accelerate Note.** The Bank shall have the right at its option without notice to Grantor to declare the entire unpaid balance of the Note, together with all accrued unpaid interest, fees, and charges, immediately due and payable.

**b. UCC Remedies.** With respect to all or any part of any personal property, the Bank shall have all the rights and remedies of a secured party under the Uniform Commercial Code as adopted in the jurisdiction where the Property is located.

**c. Power of Sale.** If the Bank invokes the power of sale, and if it is determined in a hearing held in accordance with applicable law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Grantor and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Grantor, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale.

**d. Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or the Bank otherwise becomes entitled to possession of the Property upon Default, Grantor shall become a tenant at sufferance of the Bank or the purchaser of the Property and shall, at the Bank's option, either (i) pay a reasonable rental for the use of the Property, or (ii) vacate the Property immediately upon the demand of the Bank.

**e. Enter and Use the Property.** The Bank may enter upon and take possession of the Property without the appointment of a receiver, or an application therefor, employ a managing agent of the Property and let the same, either in its own name or in the name of Grantor, and receive the rents, incomes, issues and profits of the Property and apply the same, after payment of all necessary charges and expenses, on account of the Secured Indebtedness. Grantor transfers and assigns to the Bank Grantor's lessor interest in any lease now or hereafter affecting the whole or any part of the Property.

**f. Sale of Property.** In case of any sale under this Deed of Trust by virtue of the exercise of the power of sale herein granted, or pursuant to any order in any judicial proceedings or otherwise, to the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. Trustee shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales, at such place or places as may be permitted by applicable law, at such time, in such manner, and upon such terms as Trustee may fix. Trustee may adjourn or postpone sale of all or any part of the Property by public announcement at the time and place of any previously scheduled sale. The Bank or its designee shall be entitled to bid at any sale on all or any portion of the Property. The Property or any part thereof may be sold in one parcel and as entirety, or in such parcels, manner or order as Trustee in Trustee's sole discretion may elect, and one or more exercises of the powers herein granted shall not extinguish or exhaust the power unless the entire Property is sold and the Secured Indebtedness paid in full. Trustee shall deliver to the purchaser a trustee's deed without any covenant or warranty, express or implied, and shall apply the sale proceeds in the following order: (i) to all expenses of the sale, including without limitation a trustee's commission of five percent (5%) of the gross sale price and reasonable attorney's fees, (ii) to the Secured Indebtedness, and (iii) the excess, if any, to the person or persons legally entitled to it.

**g. Notice of Sale of Personal Property.** The Bank shall give Grantor reasonable notice of the time and place of any public sale of any personal property or of the time after which any private sale or other intended disposition of any personal property is to be made. Reasonable notice shall mean notice given at least ten (10) calendar days before the time of the sale or disposition.

**h. Waiver; Election of Remedies.** A waiver by any party of a breach of a provision of this Deed of Trust shall not constitute a waiver of or prejudice the party's rights otherwise to demand strict compliance with that provision or any other provision. Election by the Bank to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or take action to perform an obligation of Grantor under this Deed of Trust after failure of Grantor to perform shall not affect the Bank's right to declare a default and exercise its remedies under this Deed of Trust.

**i. Attorneys' Fees; Expenses.** Whether or not any court action is involved, all reasonable expenses incurred by the Bank that in the Bank's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Secured Indebtedness, shall be payable on demand and shall bear interest from the date of expenditure until repaid at the interest rate provided for in the Note. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, the Bank's reasonable attorneys' fees and the Bank's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**j. Receiver.** The Bank, in any action to foreclose this Deed of Trust, or upon any Default, shall be at liberty to apply for the appointment of a receiver of the rents and profits or of the Property or both without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Property as security for the Secured Indebtedness, or the solvency of any person or corporation liable for the payment of such amounts.

**k. Pay Expenses.** Pay any sums in any form or manner deemed expedient by the Bank to protect the security of this Deed of Trust or to cure Default other than payment of interest or principal on the Note; make any payment hereby authorized to be made according to any bill, statement or estimate furnished or procured from the appropriate public officer or the party claiming payment without inquiry into the accuracy or validity thereof, and the receipt of any such public officer or party in the hands of the Bank shall be conclusive evidence of the validity and amount of items so paid, in which event the amounts so paid, with interest thereon from the date of such payment at the rate of interest stated in the Note, subrogated to any encumbrance, lien, claim or demand, and to all the rights and securities for the payment thereof, paid or discharged with the principal sum secured hereby or by the Bank under the provisions hereof, and any such subrogation rights shall be additional and cumulative security to this Deed of Trust.

**l. Other Remedies.** The Bank shall have all other rights and remedies provided in this Deed of Trust or the Note or as available at law or in equity.

**12. Grantor Not Released; Forbearance by Bank of America Not a Waiver.** Renewal, modification or extension of the time for payment, modification of amortization of the Secured Indebtedness, transfer of the Property, or any forbearance granted by the Bank shall not operate to release the liability of the original Grantor or Grantor's successors in interest or any other person. The Bank shall not be required to commence proceedings against any successor in interest or any other person, or refuse to extend time for payment or refuse to otherwise modify amortization of the Secured Indebtedness by reason of that or any demand made by the original Grantor or Grantor's successors in interest or any other person. Any forbearance by the Bank in exercising any right or remedy shall not be a waiver of or preclude the exercise of that or any other right or remedy.

Neither failure by the Bank to exercise nor delay by the Bank in exercising or discontinuance of the exercise of any power, right or remedy upon or after any Default shall be construed as a waiver of such Default, or as a waiver of the right to exercise any such right, power or remedy at a later date. No single or partial exercise of any such right, power or remedy shall preclude, waive or otherwise affect any other or further exercise thereof, or the exercise of any other right, power or remedy. Any waiver, permit, consent or approval of any kind by the Bank, whether of any breach of or Default under this Deed of Trust, the Note or any other Loan Document or otherwise must be in writing and shall be effective only to the extent set forth in such writing.

The Bank shall have the right from time to time to sue for any sums, whether interest, principal or any installment or either or both, taxes, penalties, or any other sums required to be paid under the terms of this Deed of Trust, as the same become due, without regard to whether or not all of the Secured Indebtedness shall be due on demand, and without prejudice to the right of the Bank thereafter to enforce any appropriate remedy against Grantor, including an action of foreclosure, or any other action, for a default or defaults by Grantor existing at the time such earlier action was commenced.

(Page 6 of 8)

BOOK 1682 PAGE 1040

**13. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Deed of Trust shall bind and benefit the successors and assigns of the Bank and the heirs, representatives, successors, and assigns of Grantor, subject to the provisions of Section 16. Grantor's covenants and agreements shall be joint and several. Any Grantor who signs this Deed of Trust but does not execute the Note: (a) is signing this Deed of Trust only to grant, bargain, sell and convey that Grantor's interest in the Property under the terms of this Deed of Trust; (b) is not by signing this Deed of Trust becoming personally obligated to pay the Note; and (c) agrees that the Bank and any other Grantor may agree to renew, extend, modify, forbear or make any accommodations with regard to the terms of this Deed of Trust or the Note or any other Loan Document without that Grantor's consent. The foregoing does not limit the liability of Grantor under any guaranty agreement or other agreement by such Grantor whereby such Grantor becomes liable for the Secured Indebtedness in whole or in part.

**14. Notices.** Every provision for notice and demand or request shall be deemed fulfilled by written notice and demand or request personally served on one or more of the persons who shall at the time hold the record title to the Property, or on their heirs or successors, or mailed by depositing it in any post office station or letter box, enclosed in a postpaid envelope (a) addressed to such person or persons, or their heirs or successors, at his, their or its address last known to the Bank or (b) addressed to the street address of the Property.

**15. Transfer of the Property or a Beneficial Interest in Grantor.** If all or any part of the Property or any interest in it is sold, transferred, conveyed, quit-claim deeded, voluntarily or involuntarily, by operation of law or otherwise (or if a beneficial interest in Grantor is sold or transferred, voluntarily or involuntarily, by operation of law or otherwise, and if Grantor is not a natural person) without the Bank's prior written consent, the Bank may, at its option, require payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by the Bank if exercise is prohibited by federal or state law as of the date of this Deed of Trust. The Bank may, in its sole discretion, in any one or more instances waive its option to require payment in full under this Section 15, but it shall have no obligation to do so, and any waiver may be conditioned upon such one or more of the following (if any) which the Bank may require: (i) the transferee's integrity, reputation, character, creditworthiness and management ability being satisfactory to the Bank in its sole judgment; (ii) Grantor and transferee executing, prior to such sale or transfer, a written assumption agreement containing such terms as the Bank may require; (iii) a principal pay down on the Note; (iv) an increase in the rate of interest stated in the Note; (v) a transfer fee; and (vi) any modification of the terms of the Note and/or the other Loan Documents which the Bank may require.

If the Bank requires payment in full pursuant to this Section 15, the Bank shall give notice of acceleration. The notice shall provide a period of not less than ten (10) calendar days from the date the notice is delivered or mailed within which all sums secured by this Deed of Trust must be paid. If these sums are not paid prior to the expiration of this period, the Bank may invoke the power of sale and any other remedies by this Deed of Trust and/or any other Loan Document without further notice or demand on any person, except as otherwise may be required by applicable law.

**16. Release.** Upon payment of the Secured Indebtedness in full, the Bank or Trustee shall release this Deed of Trust without charge to Grantor except for any recordation costs.

**17. Subrogation.** Any of the proceeds of the Note used to pay any debt secured by any outstanding lien or encumbrance against all or any part of the Property have been advanced by the Bank at Grantor's request and upon Grantor's representation that such amounts are due and are secured by valid liens against the Property. The Bank shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any such outstanding liens and debts, regardless of whether said liens or debts are acquired by the Bank by assignment or are released by the owner or holder thereof upon payment, and all of the same are recognized as valid and subsisting and are renewed and continued and merged herein to secure the Secured Indebtedness, but this Deed of Trust shall govern and control the enforcement of the liens to which the Bank is subrogated hereunder.

**18. Fees and Expenses.** To the extent not prohibited by applicable law, Grantor will pay, and will reimburse to the Bank on demand to the extent paid by the Bank: (a) all appraisal fees, filing and recording fees, taxes, abstract fees, title search or examination fees, title policy and endorsement premiums and fees, Uniform Commercial Code search fees, escrow fees, reasonable attorneys' fees, environmental inspection fees, survey fees and all other out of pocket costs and expenses of any kind incurred by Grantor and/or the Bank in connection with the preparation of the Loan Documents, closing and funding of the Note, and any and all amendments and supplements to the Loan Documents; and (b) all costs and expenses, including reasonable attorneys' fees and expenses, incurred or expended in connection with the exercise of any right or remedy, or the enforcement of any obligation of Grantor, under this Deed of Trust or under any other Loan Document.

The Bank may, at its option at any time Grantor is in default under the terms of the Note or the other Loan Documents, obtain an appraisal satisfactory to the Bank of the Property or any part thereof by a third party appraiser engaged by the Bank and annual financial statements of Grantor (including disclosure of all contingent liabilities). Grantor hereby agrees to provide to the Bank such financial statements in form and content satisfactory to the Bank within ten (10) calendar days of each such request therefor by the Bank, as well as such other financial statements, if any, as and when required by any other Loan Document. To the extent not prohibited by applicable law, the cost of each appraisal shall be a part of the Secured Indebtedness and shall be paid by Grantor to the Bank on demand.

**19. Effective as Financing Statement.** This Deed of Trust shall be effective as a financing statement filed as a fixture filing with respect to all fixtures included within the Property, and is to be filed for record in the real estate records of each county where the Property (including said fixtures) is situated. This Deed of Trust shall also be effective as a financing statement covering any other Property and may be filed in any other appropriate filing or recording office. A carbon, photographic or other reproduction of this Deed of Trust or of any financing statement relating to this Deed of Trust shall be sufficient as a financing statement for any of the purposes referred to in this Section 19.

**20. Waivers.** Grantor hereby expressly waives presentment, demand, protest, notice of protest, notice of intention to accelerate, notice of acceleration, and any other notice or declaration of any kind, except as may be required by the Loan Documents or applicable law. To the extent allowable by applicable law, Grantor, for Grantor and Grantor's family, hereby waives and renounces all homestead and exemption rights, if any, provided for by the Constitution and Laws of the United States or the State of North Carolina, in and to the Property as against the collection of the Secured Indebtedness, or any part thereof; and Grantor agrees that where, by the terms of this Deed of Trust or the Note, a day is named or a time fixed for the payment of any sum of money or the performance of any agreement, the time stated enters into the consideration and is of the essence of the whole agreement.

**21. Governing Law; Severability.** This Deed of Trust shall be governed by North Carolina law and applicable federal law. If a court of competent jurisdiction finds any provision of this Deed of Trust to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Deed of Trust in all other respects shall remain valid and enforceable.

Page 6 of 7

(Page 7 of 8)

BOOK 1682 PAGE 1011

**22. Interpretation.** Within this Deed of Trust, words of any gender shall be held and construed to include any other gender, and words in the singular number shall be held and construed to include the plural, unless the context otherwise requires. Titles appearing at the beginning of any subdivisions hereof are for convenience only, do not constitute any part of such subdivisions, and shall be disregarded in construing the language contained in such subdivisions. The Bank has no fiduciary, partnership or other special relationship with Grantor under the Loan Documents or with respect to their subject matter, nor any implied covenants or duties, and any contrary inferences are hereby negated.

**23. Trustee Provisions.** Trustee shall be protected in acting upon any notice, request, consent, demand, statement, or other document believed by Trustee to be genuine. Trustee shall not be liable for any act or omission unless willful. To the extent permitted by law, Trustee may act under this Deed of Trust even though Trustee may be now or in the future, or may have been, the Bank's attorney. All rights, remedies, powers, and duties of Trustee under this Deed of Trust may be exercised or performed by one or more Trustees acting alone or together. The Bank, at its option, may from time to time remove or substitute any Trustee, add one or more trustees, or appoint a successor trustee to any Trustee, by an instrument recorded where this Deed of Trust is recorded. Without any further act or conveyance, the substitute, additional, or successor trustee shall become vested with all the title, rights, remedies, powers, and duties conferred upon Trustee herein and by applicable law.

**24. Special Provisions.** (If blank, there are no special provisions].

Any litigation arising out of or relating to this Deed of Trust or the Note shall be commenced and conducted in the courts of the State of North Carolina for the counties or the federal courts for the districts in North Carolina where _____ BANK OF AMERICA, N.A. _____ maintains offices and conducts banking business.

**In Witness Whereof,** this Deed of Trust has been duly executed by Grantor under seal the day and year first above written and Grantor acknowledges receiving a full and completed copy of this Deed of Trust (regardless if Grantor's signature appears on the copy). The word "Grantor" means each Grantor, jointly and severally, if there is more than one Grantor.

**Individual Grantor(s):**

_____ (Seal)
**Grantor Signature**

_____
Type or Print Name

*Christopher W. Harper* (Seal)
**Grantor Signature**

__CHRISTOPHER W HARPER__
Type or Print Name

*Natasha L Harper* (Seal)
**Grantor Signature**

__NATASHA L HARPER, MARRIED TO EACH OTHER__
Type or Print Name

Corporate Attest:

**Corporate Grantor:**

_____
**Corporate Secretary**

_____
Type or Print Grantor Name

_____
Type or Print Name

By:_____ (Seal)
**President or Vice President**

_____
Type or Print Name

**(Corporate Seal)**

_____
Type or Print Title

Page 6 of 7

(Page 8 of 8)

**Individual Acknowledgment:**

State /Commonwealth/District of _NORTH CAROLINA_ )

_COUNTY_ of _ONSLOW_ ) ss

BOOK **1682** PAGE **1042**

I, the undersigned, a Notary Public in and for the jurisdiction aforesaid, do hereby certify that _CHRISTOPHER W. HARPER AND SPOUSE NATASHA L. HARPER_ , whose name(s) is/are signed to the Deed of Trust above, personally appeared before me this day and acknowledged the execution of the foregoing Instrument.

Witness my hand and official stamp or seal, this _14th_ day of _FEBRUARY 2001_.

Signature of Notary Public

_JOHN J. PECK_
Name of Notary Typed, Printed or Stamped

_MARCH 29, 2004_
Commission Expiration Date/Serial Number, if any

Notary Seal - Stamp

**Corporate Acknowledgment:**

State /Commonwealth/District of _____ )

_____ of _____ ) ss

I, the undersigned, a Notary Public in and for the jurisdiction aforesaid, do hereby certify that _____ , personally appeared before me this day and acknowledged that he/she is the _____ Secretary of _____ ,a North Carolina corporation, and that by authority duly given, and as the act of the corporation, the foregoing instrument was signed in its name by its_____ President, sealed with its corporate seal and attested by himself/herself as its _____ Secretary.

Witness my hand and official stamp or seal, this _____ day of _____ .

_____
Signature of Notary Public

Notary Seal - Stamp

_____
Name of Notary Typed, Printed or Stamped

_____
Commission Expiration Date/Serial Number, if any

The Foregoing Certificate(s) of _____ John J. Peck _____

is(are) certified to be correct. This instrument and this certificate are duly registered at the date and time in the Book and Page shown on the first page hereof:

_Mildred M. Thomas_ REGISTER OF DEED FOR _Onslow_ COUNTY

BY_____ Deputy/Assistant-Register of Deeds

Page 7 of 7